

April 2, 2020

Laith J. Hamdan
Direct: 212/541-2328
Fax: 212/541-1328
Laith.Hamdan@bclplaw.com

Hon. Lorna G. Schofield
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

**FILED BY ECF**

Re:   *DK Real Estate Group LLC, et al. v. Klearwall Indus., LLC, et al.*, No. 18-cv-7439 –
      Request for Pre-Motion Conference

Dear Judge Schofield:

This firm represents defendant Munster Joinery Unlimited Co. ("Munster") in connection with the above-referenced action. We write jointly with Klearwall Industries, LLC ("Klearwall," and together with Munster, the "Defendants") to request a pre-motion conference pursuant to this Court's Local Rule III.A.1, in connection with the Defendants' proposed motions for summary judgment. Defendants are entitled to summary judgment dismissing this action with prejudice because Plaintiffs are unable to establish Defendants' liability under any of the product defect claims asserted in the Complaint.

It is undisputed that, prior to the commencement of this action, plaintiff DK Real Estate Group LLC ("DKRE") purchased a total of 144 "Eco-Therm 58" aluminum window and door units from Klearwall. The products were manufactured by Munster at different times pursuant to orders placed over the course of one and a half years. The products were shipped to DKRE and installed by DKRE's affiliate and co-plaintiff, DK Builders Group Inc. ("DK Builders," and together with DKRE, "Plaintiffs") in three apartment buildings that DKRE was then developing for rental. Although Plaintiffs allege in their Complaint that every single one of these products fails     to adequately prevent rain from infiltrating their buildings due to an unspecified defect – a problem that has not been reported to Defendants by any other purchaser of their Eco-Therm 58 product line – Plaintiffs have since completed all three apartment buildings without incurring any additional costs to repair or replace the products, and every available apartment has been rented out to tenants without issue.

Plaintiffs now demand over $1.5 million in "estimated" damages under various product liability theories (including breach of warranty, negligence, strict liability, fraudulent concealment, deceptive trade practices, and false advertising). Although Plaintiffs' individual legal theories each fail for different reasons not discussed in this letter, all of Plaintiffs' claims collectively fail for the same three reasons: (1) there is no evidence that any products fail to satisfy appropriate watertightness standards; (2) there is no evidence that any leakages are a result of a product defect; and (3) there is no evidence that Plaintiffs suffered compensable injuries as a result of any leakage. Because each of these deficiencies independently precludes a

601676793.2

April 2, 2020
Page 2



finding of liability against Defendants, it is respectfully submitted that summary judgment should be entered in Defendants' favor as a matter of law.

1. <u>No Evidence of Inadequate Product Performance</u>

As an initial matter, Plaintiffs cannot establish any of their causes of action without showing that their Eco-Therm 58 products fail to perform as they should. While Plaintiffs generally claim that the products leak, it is undisputed that no window or door is one hundred percent watertight; different windows and doors are designed to meet different watertightness performance standards. Defendants' expert, John Monroe, RA, FMPC, of RAND Engineering & Architecture, DPC, has offered unrebutted testimony that the proper watertightness standard for the products at issue is determined by reference to AAMA/WDMA/CSA 101/I.S.2/A440-08, which provides that the products should withstand water infiltration for 15 minutes when the exterior is evenly sprayed with water at a rate of 5 gallons per hour under a pressure differential of 3 psf. Thus, the appropriate standard is not in dispute.

Plaintiffs have offered no evidence that the products failed to meet this performance standard. Although Plaintiffs' principal, Kieran Treanor, testified that he does not have the necessary expertise to assess the products' performance himself, no expert has offered to testify on behalf of Plaintiffs that any product failed to perform adequately.[1] Instead, Plaintiffs claim that six products leaked during testing performed by Farabaugh Engineering and Testing, Inc. ("FET") at a pressure of **8 psf** (almost three times the appropriate pressure differential prescribed by applicable standards), and other products leaked when Plaintiffs independently sprayed them with a hose for **30 minutes** (twice the appropriate test duration). Six products were also professionally tested by Intertek Architectural Testing, Inc. ("Intertek") at a pressure of **4.5 psf** (50% greater than the appropriate standard, and under which conditions leakages were generally minimal and did not begin to occur until about 12 minutes into the 15-minute tests). Leakages under these excessive testing conditions do not and cannot demonstrate that the products fail to meet the applicable performance requirements. Therefore, Plaintiff is unable to establish that the products fail to perform adequately.[2]

2. <u>No Evidence That Inadequate Product Performance Is Caused By a Defect</u>

Even if Plaintiffs' evidence could support their claim that the products fail to adequately prevent water from infiltrating Plaintiffs' buildings – and it cannot – Plaintiffs nevertheless fail to offer any evidence of **why** the products leak. In other words, there is no evidence that any leak is the result of a product defect. Under New York law, a product defect may be shown by identifying a specific problem with the product's design, or by establishing that a particular product was improperly manufactured. Plaintiffs have no evidence of either type of defect.

---

[1] Plaintiffs were given additional time to obtain an expert report to support their claims, but have failed to do so. As a result, they are now precluded from offering expert testimony in this action pursuant to the Court's order dated January 8, 2020 [ECF # 77].

[2] Defendants note that Plaintiffs do not claim that **all** windows leak. In fact, Mr. Treanor previously testified on behalf of Plaintiffs that he was not sure which products were leaking. At a minimum, Plaintiffs are unable to demonstrate inadequate product performance with respect to any products for which Plaintiffs have not offered evidence of leaks.

April 2, 2020
Page 3



Plaintiffs have identified no aspect of the products' design which could cause the issues of which Plaintiff complains. In contrast, Mr. Monroe has opined that his review of the products' specifications indicates that their design is sufficient to satisfy applicable watertightness standards. This conclusion this further supported by the tens of thousands of Eco-Therm 58 units that Defendants manufacture and/or sell each year without receiving complaints of water penetration such as those asserted by Plaintiffs in this action.

Nor do Plaintiffs offer evidence of any specific manufacturing errors in any or their products. Instead, Plaintiffs assume (without offering any expert testimony or other evidence) that evidence of leakages – in and of itself – is sufficient to establish that the products were improperly manufactured. To the contrary, the unrebutted expert testimony of Mr. Monroe establishes that windows and doors can leak for a large number of reasons, including not only product defects but installation issues, mishandling, or damage to the product. There is evidence that products were improperly installed by Plaintiffs. For example, one of Plaintiffs' tenants reported water penetration through a gap in her door frame and another complained of water leaking through her ceiling, both of which indicate installation issues (these were the only complaints that Plaintiffs received about water infiltrating any tenant's apartment). Water penetration has also been observed through the outer perimeter of installed products (*i.e.* where the frame meets the opening of the building), which is another indication of installation problems. In addition, there is evidence Plaintiffs may have mishandled or damaged the products by subjecting them to significant impacts, forcing them out of square, and covering, filling, or drilling into their drainage systems. Thus, evidence of leaks alone, without additional evidence of their cause, cannot support Plaintiffs' claim that any product is defective.

In any event, Plaintiffs themselves admit that not every product leaks. Thus, without identifying which specific windows actually leak, Plaintiff cannot show that any particular window was defectively manufactured.

3.  No Evidence That Plaintiffs Suffered Compensable Injury

Regardless of the products' performance, Plaintiffs are not entitled to relief in this action because they fail to offer any evidence of compensable injury resulting from the products' alleged defects. It is undisputed that Plaintiffs have made no efforts to repair or replace any of the allegedly defective products – which continue to be used daily at each of Plaintiffs' three apartment buildings – and Mr. Treanor himself admits that he believes replacement is not necessary. It is also undisputed that Plaintiffs have rented out every available apartment unit and have experienced no loss of rental revenue as a result of the purported defects. Further, Plaintiffs offer no evidence of any impairment to the market value of their buildings, or to the value of the windows themselves, as a result of the alleged defects. Nor do Plaintiffs offer any evidence of property damage, repair costs, additional insurance premiums, or any other compensable category of damages resulting from the alleged defects. Thus, Plaintiffs offer no basis upon which damages could be awarded. Because Plaintiffs cannot establish any recoverable damages in this action, their claims should be dismissed.

For these and many other reasons, which will be more fully set forth in Defendants' proposed motions, Defendants respectfully submit that summary judgment should be entered in their favor, dismissing this action with prejudice. Thank you for your consideration in this matter.

601676793.2

April 2, 2020
Page 4



Respectfully Submitted,

*/s/ Laith J. Hamdan*
Laith J. Hamdan

601676793.2